the fourth district appellate court of the state of illinois has now convened the honorable peter c cavanaugh presiding thank you this is four dash two one dash zero four eight nine people the state of illinois versus trujillo for the uh appellant would you please state your name for the record edward j wittrig on behalf of the thank you and for the appellee luke mcneil thank you counsel you may proceed your honors may it please the court counsel my name is edward wittrig i'm with the office of the state appellate defender i represent the petitioner appellant mr moises trujillo on this appeal in this case trujillo a young xanax addict with a ninth grade education and he spoke english as a second language was kept in custody isolated in a high-risk cell away from others and deprived of any access to a telephone or any access to the courtroom in violation of his statutory rights now during this period of intense isolation the detectives repeatedly cursed at him branded him a liar and told him in no uncertain terms that he murdered mr pool and robbed him even though that theory did not match the scene of the crime so predictably days later when the girlfriend that he resided in the love of his life released from custody that he could finally call his mother and he spoke to his mother every day and could actually have a life with ms kennedy if he cooperated he understandably i believe there was feedback counsel you're fine sorry about that i didn't want to interrupt he he understandably provided the detectives with exactly what he knew they wanted to hear and that is he shot mr pool during the course of a robbery so under the totality of these circumstances trujillo's will was overborne by these efforts to isolate him and deprive him of the statutory rights the circuit court reversibly erred in finding otherwise and this court should reverse and remand for a new trial with these statements to police suppressed so looking at the telephone issue first it's well established that in this state an arrested person has a statutory right to reasonable telephone access when they're in custody and specifically here at the time of his arrest section 725 ilcs 5 103-3 provided that trujillo had the right to communicate with an attorney of his choice and a member of his family by making a reasonable number of telephone calls or in any other reasonable manner such communication shall be permitted within a reasonable time after arrival at the first place of custody now in interpreting that statute the illinois supreme court has determined that a reasonable amount of time is a really short period such as a couple of hours and the illinois supreme court has also recognized that given this inherently coercive atmosphere that's created at a police station extended delays and providing a a suspect the means to speak with an attorney and and to procure bond is going to reduce their ability to avoid the psychological pressures of a custodial detention and that's going to increase the likelihood that a statement is involuntary so any violation of the statute has to be considered in analyzing the totality of the circumstances council if i may as it relates to other reasonable manner why isn't the discussion that he had with kennedy when he's allowed to speak with her why does that not satisfy the statute yes your honor um first it wasn't within the reasonable amount of time um the legislature envisioned a couple of hours and this was outside that couple of hour framework and that's the only supreme court's interpretation of of that statute and people salomon additionally uh the context of that conversation also has to be considered he was just um he had attempted to enter the the ceiling uh the drop down ceiling and into the void space but beneath the floor and he was pulled to the ground and he was sobbing for officers to to detectives brought miss kennedy in to calm him down and so it wasn't really a time where he could rationally discuss obtaining legal representation or procuring bond and and even more more importantly at the time he gave his statement he no longer had telephone access and kennedy was actually in custody so when when he when he believed that excuse me the detectives specifically told him that she was in custody and her release depended on him and so when he's giving this statement he can't believe that she'll be of and i think it's also importantly regarding the telephone access issue is the detectives were intentionally preventing him from having telephone access at the motion to suppress hearing the detectives provided that mr ragsdale was a co-defendant and he hadn't been apprehended at the time and so that was some justification for depriving mr trujillo of telephone access but immediately after he gave and trujillo immediately after trujillo gave his statements to police the detectives allowed him to call his mother to call his brother to call his girlfriend and this is even though ragsdale was not apprehended until a month later and again his access within the jail was restored his telephone access within the jail was restored as well and so so that that that was clearly just a pretext um and actually flynn offered the real reason he was preventing and this is lead lead investigator um detective flynn the real reason he was preventing true trujillo from using the phone and that's quote i'm not going to let him make any phone call but if he cooperates i would let him make a phone call so taking detective flynn's own own words here for helo's statutory right to telephone access and thus obtain legal representation um try to coordinate efforts to to procure money for bond to inform others about his current whereabouts and status and in condition and needs all of this was premised on providing the detectives with a statement that they would accept and so in conjunction with this denial of telephone access this court should also consider the the length of the detention so from his arrest in both the length and the manner of the attention excuse me from his arrest on march 1st 24th 2017 until he's finally brought before the court on isolated in a high-risk cell and so the council there was a probable cause hearing that was held albeit x party on the criminal damage charge isn't that correct and then a new bond was set yes your honor uh there is no contention here that he was unlawfully detained he was lawfully detained but okay the appellate court and people v sugs and that's cited in the the opening brief does recognize that a lengthy um time between being arrested and actually appearing before the court being presented to the court can cut against the voluntariness of a statement even if it is a lawful detention although admittedly um the the that decision makes it clear that it slightly cuts against the the voluntariness so so this court should consider the denial of access to the court in conjunction with all these other factors as well regarding the delay and being presented to the the circuit court the circuit court here rejected that claim because of trujillo's purported escape attempt so i blame trujillo some conduct on any any delay that was caused in this case but the circuit court in that process overlooked that trujillo was transported to the hospital for maybe an hour to an hour and a half before he was returned to police custody and so there was and so that delay was very minimal and the he wasn't such an escape risk that the police or detectives felt they had to remain in in jail he was still transported to to the interrogation room and so there's no reason he couldn't be transported to the to the courtroom and actually the more likely cause of trujillo's delay here before he appeared on on the war was detective flynn's admission that suspects are sometimes withheld from court when the officers are still working on the case and to that point trujillo clearly believed that the detectives controlled his access to the courts he was kept alone isolated from all others except when the detectives would bring him to the interrogation room and so it conveyed to him that the detectives actually controlled the circumstances of his the officers efforts to provide an extrajudicial statement that matched match what they were wanting to hear and so in in conjunction with with this isolation and with this denial of the right to to telephone it was also very clear on the record that trujillo was a xanax user he admitted the the extent of his xanax usage during these interrogations there were also jail records from a past experience that documented his his xanax usage and the detectives also spoke with ms kennedy as well about his xanax usage and so so the record is very clear that there's no question at that time trujillo depended on xanax and that his arrest immediately stopped his ability to obtain and use it now the circuit court rejected that trujillo was under the influence or withdrawing from xanax because during the interview he he answered questions appropriately and he didn't appear to manifest any symptoms of withdrawing that would interfere with his his responses but i am arguing specifically here that that finding was against the manifest way to the evidence what evidence counsel was there real excuse me what evidence was there that really supports um that the withdrawal impacted the voluntariness of that those statements what evidence was presented so trujillo um besides his testimony obviously he also presented medical records from the jail that he was prescribed librium um by the the doctors that what and librium is a is an anti or it combats the effects of the withdrawal that he was experiencing and so he was at least manifesting enough of a fact that the doctors felt compelled to prescribe this medication and then also on march 25th 2017 which is admittedly two days after the first admissions he was brought to the hospital when he was found non-responsive in his cell by emergency medical services and so so i asked this court to also consider his addiction and withdrawal in combination with this isolation and denial of the his right to telephone and court access um in the totality of the circumstances test as well and moving on to my final point here regarding the interrogations the detectives made certain promises to trujillo and these were made when he was in a very fragile and susceptible state and all this contributed to overcoming his will and rendering these statements involuntary so first detective flynn led trujillo to falsely believe that miss kennedy was in custody as a result of him and again this is kennedy the love of his life his long-standing girlfriend and they've been together for quite a while and so trujillo specifically asked when if she would be released if he talked with the officers and flynn informed him that it all depended on him and so this would relate to trujillo that he could actually obtain her release in exchange for providing a statement and then the detectives further expressly promised that they would no longer interfere with the statutory right to have telephone access if he provided a statement and and so so that was an explicit condition on explicit explicit benefit excuse me that he could receive for for providing the office or the detectives with what they wanted to hear and then finally the detectives also stated that to have a life with kennedy and to see her trujillo would need to tell the truth and trujillo knew what the detectives meant by they had frequently accused him of murdering mr pool and so so especially in in the context where they had explained different levels of charges previously this would indicate to him that he could obtain some leniency in his case and avoid life in prison if you gave him the statement under the entirety of these circumstances the detectives kept trujillo unknown xanax addicts in isolation for multiple days away from access to the to counsel to court to family support and then they conditioned access to a telephone and his girlfriend's release on a confession and it will promise a degree of leniency and so all these factors contributed together to to overcome his will and he gave the detectives a statement that they wanted and finding otherwise the circuit court erred and this court should find that his statements the police were not voluntary and this improper denial mattered in this case specifically and no harmless air analysis should be applied without trujillo's admissions there's very little here from the scene of the crime to suggest that trujillo shot mr pool during an armed robbery rather than just being a a tragic shooting that occurred during a physical altercation with no the from the scene of the crime after the shooting of this range from televisions gaming systems video games expensive shoes also may i interrupt since the time is going very quickly and i had a question regarding your argument on the crankle hearing you argued that the crankle hearing really was inadequate and um that um you also tie that to ineffective assistance of counsel for not raising the corpus delecta argument um my question to you is really didn't the trial court here in conducting that hearing allow the defendant to raise any and all issues that he wanted to and in fact didn't he raise this issue himself when he talked about the insufficiency of the evidence no your honor in the context of the the insufficiency claim he didn't specifically address corpus delecti well he didn't use those words but i mean the gist of his argument was that and again the trial court certainly didn't limit what the defendant could um discuss yes your honor he clearly did not limit um the what he could discuss but my argument here is that once it is raised once once the ineffective specific ineffective assistance of counsel claim is raised in a written motion the circuit court has then has to specifically address it and and my argument here is that the record isn't clear that that claim was being addressed um returning briefly to the to the the evidence in this case uh there also weren't or there was cash left at the the scene of the crime which again is inconsistent with a armed robbery um there was cash strewn about the floor in plain view there was cash in mr pool's pocket i believed it amounted to 354 there was also money uh in his roommate's room that exceeded i believe a thousand dollars and there was also here factors that supported true healers trial testimony that he needed use force to defend himself for mr pool Trujillo was around 50 pounds smaller than pool and it was known to him specifically that pool kept firearms and Trujillo sustained lacerations during this encounter multiple witnesses explained that that he was bloodied after in the aftermath of the shooting and so without these extrajudicial statements the state's main corroborating evidence here that a robbery occurred rather than this just being a cannabis sale gone awry was co-defendants um rosa's his statements to police however i'm sorry i'm going to interrupt again because of course i'm watching the clock here and we haven't touched at all on the sentencing issues um one of your arguments is that the trial court made an error by imposing the 25 year uh firearm enhancement to the sentence for first degree murder and because that's a factor inherent in defendant's conviction for armed robbery there was a double enhancement but isn't it a fact that the legislature has indicated um that these are two separate enhancements that can be um added or two separate uh enhancements that that's correct the 25 year to life sentencing can be added to each of the convictions isn't that clear in the statutes your honor and i will first acknowledge that the the legislature does have the power to permit double enhancements if it clearly elects to do so my argument here in this case is that it didn't intend for both um both enhancements to be added when there is a total aggregate sentence and it penalizes um it imposes this 25 year to life enhancement twice within the aggregate sentence and your authority for that last point that you just made is what case and i will acknowledge there is very little case law on this specific um issue and i am relying on an extension um it's not there is no specific case that i have and i'm arguing for an extension of kind of analogous cases your honor okay thank you and so i see that my my time is about up and i would just argue that this court reverse and remand mr trujillo's convictions and remand for a new trial where the evidence of his statements to detectives are suppressed and i will stand on the briefing for arguments two three and four unless there are any other questions and rebuttal thank you i see none thank you mcneil may it please the court counsel as for the first argument voluntary confession argument we do look at the totality of the circumstances um defendant here was allowed to physically see his girlfriend minutes after trying to escape through the ceiling of the interrogation room and this was before he confessed uh clearly a reasonable person in defendant's position at that point uh being doing about the worst thing you can do in an interrogation room and then being allowed to see his longtime girlfriend a person in defendant's position would not think that a confession was needed before further contact with that girlfriend because he was already allowed to see her and again about the phone access that the record refutes that defendant called his girlfriend again that night after that first interrogation and they arranged or tried to obtain bail money this was prior to any confession so the next time defendant did talk to police was a couple days later and he was in a high-risk cell that was of his own doing though he tried to escape and then on top of that asked the police to kill him right after that so the reason he was in a high-risk cell was not to isolate him from the world or get him to confess it was because he needed to be in a high-risk cell and in fact if he wasn't i'm sure we'd be arguing that point on this appeal instead um at that second interview after receiving proper Miranda warnings again defendant confesses to the murder within an hour of the interview starting two days later defendant requests to and again confesses within the hour within an hour of the interview starting even going back to the first interrogation this was not a grill session of 48 straight hours or anything like that by the police although that first video is five hours long a majority of that video is defendant sitting by himself it was not a grill session by the police even for those five hours notably there's no request by defendant in that first interview to talk to anyone besides his girlfriend or make any phone calls as to the phone i think section 1 103-3 is in place to ensure that family and friends know where a defendant is and a defendant has an opportunity to try to obtain counsel if that's his desire it has nothing to do with a defendant allowed unfettered access to a smartphone which is what i think defendant was really requesting he says he wants his phone in the video he doesn't say he wants to make a phone call as we all know now smartphones are hardly used to primarily make telephone calls anymore they're used for 24-7 access to the internet there's no authority as cited cited by defendant nor can the state find authority that requires police to allow defendants to have smartphones at all times while they're incarcerated so the phone i think the record belies any any attempt at saying that defendant wasn't allowed access to phone calls he clearly was as as at least one was to his girlfriend and there's no nothing in the record suggested he wanted to make any more phone calls besides what he's requested um contacting people by the phone his family and friends were sufficiently apprised of his whereabouts his girlfriend was there while he was being arrested she knew he was being taken to the springfield police department we know that because she's there minutes after he tried to escape and and and he gets to hug and kiss her in real time as for the xanax withdrawal this was a finding of fact by the trial court therefore it's entitled to the manifest way to the evidence standard we also have the benefit of the videos i watched the videos i'm sure your honors did too defendants clearly communicating he's answering all the questions there's no i mean i i think what council's position is is that apparently he should have been given xanax by the police i don't know uh what the police would want to do that situation but this has nothing to do with the voluntariness of his confession if in fact defendant was going through withdrawals for for xanax i understood counsel to mean that this is one of the factors in looking at the totality of circumstances to determine whether or not the confession was voluntary so if you combine the fact that he was going through withdrawal with um withholding phone access um with being told that he had the key to getting his girlfriend out of jail um and the other factors opposing council mentioned i think that was the point i understood as far as getting a girlfriend out of jail there were no specific promises and again the benefit of the video to this they asked him and these are this was standard urges to cooperate by uh by the detectives in this case it's happens in most cases they're urging him to tell the truth and to cooperate um that's not improper interrogation techniques i would submit um again excuse me counsel if i may specifically on that the second interview when they make the statement when you're done talking and if you're honest i don't have a problem with you calling her uh i believe his his mother um and then relatively quickly after that he provides his his first statement or confession if you will doesn't that suggest when you look at the totality of the circumstances that that statement did coerce him uh i think that again this is defendant's burden it's uh um i we don't know he was allowed to call his girlfriend that's in the beforehand i don't know why there's nothing to uh suggest that he wasn't allowed to call his his mom too but during the second interview he specifically asked or flynn testified that the defendant asked to call his mother and flynn's response was when you're done talking and if you're honest i don't have a problem with you calling her is that a specific promise from flynn that's again just an urge to tell the truth he just said you're honest he didn't say tell us what we want to hear and you can call your your mother and again i don't know maybe he's already been in contact with his mother this is just during the interview i don't know and he might have called his mom prior to that like he called his uh his girlfriend and um i don't think i definitely don't think saying if you are honest with us you can make a phone call as any sort of specific promise especially if we don't know if we're talking about has defendant not called anybody we know that's not true he called his girlfriend so he hasn't been uh incommunicado as the uh as the standard says uh at any point and again i think i took and you're he that's what that is what the uh detective said when and at the beginning of the second interview again i think that was a little good cop bad cop with the other one um but i took i think he says i want my phone at the beginning of that interview i may be mistaken and that's what i took to uh to mean he wants access to his smartphone not just to call his mother but i looking at that at the totality of the circumstances i definitely don't think his will was overcome by the fact that the officer urged him to tell the truth with respect to the crankle hearing did the trial court not have an obligation once the issue of the corpus dialecti was raised to address it directly with the defendant no they did not the trial court as well settled the trial court can rely upon its own knowledge of the trial to accept or reject any crankle inquiry the trial court didn't need any further input by defendant or counsel to dismiss the probably the most absurd argument in a very long motion by defendant clearly there was evidence of a crime presented at trial so the trial court didn't need to go beyond its own knowledge to reject that very issue it didn't need uh any other discussion by defendant but of course defendant did talk about the sufficiency of the evidence and um i don't think the court's who respond they should have guided them to say any magic words during that crankle inquiry and um like i said that the trial court can rely upon its own knowledge it doesn't need to talk to defendant or counsel to reject uh to to determine that an appointed counsel or counsel does not need to be appointed for that crankle inquiry i think that corpus dialecti issue was rejected on his face and correctly so um i harmless error as for the first issue even assuming defendant's confession was invalid and assuming that the trial court or trial didn't jury didn't even hear defendant's confession uh the evidence against defendant was overwhelming uh rosa pointed to defendant as the murderer the jury heard that evidence i know his trial uh testimony you know as it often does contradicts that but presumably the trial the jury put more weight into the previous statement defendant admitted to juan reyes that he robbed and hurt someone on the day of the robbery and murder and then defendants undisputed actions after the murder showed his consciousness of guilt took the victim's phone destroyed evidence and this these are just the highlights i mean it was a very long trial and there was overwhelming evidence even uh disregarding defendants confession so it was harmless beyond a reasonable doubt even assuming error for the confession argument uh sentencing if you want to discuss that um the trial court specifically stated it considered quote the trial evidence the pre-sentence investigation report exhibits in additions and corrections the history character and attitude of the defendant the evidence and arguments statement of allocution considering all the factors in aggravation the appropriate ones and mitigation and with due regard to the circumstances of the offense as this court has stated many times uh i'll quote it in canizales cardena in 2012 because that was my case it's well settled that a trial court is not required to specify on the record the reason for a defendant's sentence um i've been before this court many times recently arguing that or facing an argument that the trial court considered improper factors i don't blame this court one bit for just simply stating i considered the appropriate mitigation and aggravation aggravating factors and leaving it at that um to avoid that very argument uh on appeal that they considered an improper one how does it how does that assist this court in reviewing the sentence uh generalities how did the generalities assist this court as opposed to the specifics and don't we have a little different situation when i believe it was on a motion to reconsider uh the defendant specifically asked the court to articulate the motion to reconsider um i i i without stating any basis for this 80 year sentence they they they did state a basis they stated they stated they considered the appropriate aggravating and mitigating factors presumably those were argued by defense counsel and the prosecutor um during the during the recommendation phase uh it it considered the pre-sentence investigation report it considered the trial evidence it considered the nature and circumstances of the offense but we've got a double enhancement argument here um that uh the trial court considered factors that were inherent in the offenses themselves so how do we know what the trial court really considered without anything more than we have here and how can we evaluate that well you um you about you evaluate it based on the like i said the arguments by council uh both councils the psi report um and the nature and circumstances of the offenses uh that's uh that's quite a bit of material to base this sentence on um the double enhancement i think is a red herring alvarez pretty soundly defeats it and i i would submit that the pascal case cited it's an unpublished opinion but um it's it's directly on point as persuasive authority defendant robbing the victim and defendant killing the victim were two separate acts two separate offenses the legislature clearly intended even if we want to call it double enhancement this was uh legislature authorized double enhancement the firearm enhancement adds an additional penalty to each criminal act clearly armed robbery and murder had separate acts between them and both of these enhancements were proper uh so there was no improper double enhancement as far as that goes um if if uh the sentencing if the trial court was specifically bare bones i don't think it was an abuse of discretion uh in in looking at the psi report looking at the nature and circumstances the offense looking at all the things that the trial court uh stated that it considered this was not an abuse of discretion as far as this sentence was concerned and uh unless the court has any other questions about any of the issues i'll take them or i will ask this court to affirm okay i see no questions rebuttal thank you your honors i'll be i'll be brief here um first their opposing counsel had the suggestion that trujillo needed to be in a high-risk cell because he was uh because of this escape attempt and because he was a suicide risk after he begged the officers to murder him but that he was actually released by medical from the high-risk cell and the hold was exclusively because of administrative purposes and the state didn't provide any justification of how he was any more of a risk of escaping from a high-risk cell than it if he would be just in the general population the opposing counsel also mentioned miranda warnings but i think it's important here that the miranda warnings especially during the second interrogation were almost used as a penalty he he was told by by or he specifically asked if he requested attorney would he return to this high-risk cell that he'd been in for 36 hours without without seeing anybody and the detectives told him yes so if he would request an attorney would just go back to this indefinite isolation um now he did he did request to speak with the detectives on the 25th march 25th council mentioned that but i think this just reinforces the involuntariness of his statement because the reason the only reason he requested to speak with the detectives is because they weren't honoring their end of the bargain and that was to provide phone access and so because they weren't providing phone access he asked to speak with the detectives again and i don't think there's any evidence here that he specifically wanted his own mr trujillo wanted his own cell phone or smartphone specifically a review of the record makes it clear he was just desperate to talk with his family he spoke with his mother and brother every day he very clearly wanted to see his girlfriend or speak to her in whatever manner he could and so so there isn't any claim here that this was related specifically to a cell phone um council also mentioned that the evidence was overwhelming because of raw um one racist testimony i just want to briefly address that his testimony he was an acquaintance of trujillo but his testimony was very vague and just that trujillo showed up to his apartment in the shooting's aftermath and said something about about a robbery and that he had hurt or he had hurt he may have hurt someone but there is there's no indication that he was confessing to to actually committing a robbery of anyone much less mr pool and just thinking about a robbery could be equally probative that he was worried that he was going to be blamed of a robbery and that was his trial testimony that which also explains the consciousness of guilt evidence that the state provided that he was worried he was going to be blamed for this shooting and that he'd be unable to prove his claim of self-defense and regarding the the sentencing issue i do briefly want to to address that here the state clearly made improper arguments during its sentencing arguments and it's impossible for this court to determine whether or not the circuit court credited them or not without the circuit court explaining if it considered those factors and that's especially important here where defense counsel wasn't silent on the issue and raised it in a motion to reconsider and that was the first opportunity it had to raise the issue after the circuit court made its ruling and and i believe i'm about out of time so unless there are any other questions i don't see any thank you your honors all right thank you counsel thank you both the court will take this matter under advisement we'll stand in recess